UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   MICHELE GERALDINE AMENT

Debtor.                                                                    Case No.: 19-12187-j11

### AMENDED MEMORANDUM OPINION AND ORDER RESULTING FROM FINAL HEARING ON DEBTOR'S AMENDED DISCLOSURE STATEMENT[1]

THIS MATTER comes before the Court on Debtor's Amended Disclosure Statement (Docket No. 41) filed on November 19, 2019. Creditors City Bank and New Mexico Tax and Revenue Department (NMTRD) objected to the Amended Disclosure Statement. *See* Docket Nos. 49, 50. A final hearing on the Amended Disclosure Statement was held on January 9, 2020. The parties and counsel who appeared at the hearing were noted in the record. The Amended Disclosure Statement related to Debtor's Plan of Reorganization filed November 19, 2019 (the "Plan").

City Bank objects to approval of the Amended Disclosure on two grounds: first that the Plan is unconfirmable on its face because it requires this Court to divide community property between Debtor and E. Ament, which, City Bank argues, is not within this Court's jurisdiction; and second, because the Amended Disclosure Statement does not contain adequate information in various respects. The Court will address each ground for the objections in turn.

---

[1] This amended opinion and order amends and supersedes the Court's order entered January 10, 2020 ruling on City Bank's objections to the Amended Disclosure Statement. *See* Docket No. 56. In footnote 3 of that order the Court recognized that there is an issue concerning whether the bankruptcy court has jurisdiction to divide marital property as proposed in the plan but did not rule on that issue to expedite its ruling to meet the needs of the case. This amended opinion and order rules on the jurisdictional issue reserved in the original order to give guidance to the parties in further proceedings before the Court. This amended opinion and order does not change the ruling of the Court denying approval of the Amended Disclosure Statement with leave to amend.

A.  **Should approval of the disclosure statement be denied because the Plan, which divides community property, is unconfirmable on its face?**

Approval of a disclosure statement may be denied if the plan to which it relates is facially unconfirmable. *In re Firstenergy Solutions Corp.*, 606 B.R. 720, 732 (Bankr. N.D. Ohio 2019); *In re Deming Hospitality, LLC*, No. 11-12-13377 TA, 2013 WL 1397458, at *1 (Bankr. D.N.M. Apr. 5, 2013) (J. Thuma) (citing cases). "Patent unconfirmability is treated as a matter of law." *Firstenergy*, 606 B.R. at 732.

In asserting that bankruptcy courts do not have jurisdiction to divide community property, City Bank relies on the "domestic relations exception" to federal court jurisdiction. That jurisdictional exception dates to 1858, when the United States Supreme Court "disclaim[ed] altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony . . . ." *Barber v. Barber*, 62 U.S. 582, 584 (1858). The Court disagrees that the domestic relations exception applies here.

More recently, in *Ankenbrandt v. Richards*, the United States Supreme Court reviewed *Barber* and held that "the domestic relations exception [to federal court jurisdiction] . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." 504 U.S. 689, 703 (1992). However, in doing so, the Supreme Court acknowledged that "[t]he *Barber* Court . . . cited no authority and did not discuss the foundation for its announcement." *Id.* at 694. The *Ankenbrandt* Court then examined why it would continue to recognize the domestic relations exception. First, it acknowledged that the domestic relations exception was not founded on the Constitution. *Id.* at 695.[2] Next, the *Ankenbrandt* Court determined that *Barber* was based on interpretation of the federal diversity jurisdiction statute in effect at the time:

---

[2] *Ankenbrandt*, 504 U.S. at 695 ("An examination of Article III, *Barber* itself, and our cases since *Barber* makes clear that the Constitution does not exclude domestic relations cases from the jurisdiction otherwise granted by statute to the federal courts.").

> Because the *Barber* Court did not disagree with [the dissent's] reason for accepting the jurisdictional limitation over the issuance of divorce and alimony decrees, it may be inferred fairly that the jurisdictional limitation recognized by the [*Barber*] Court rested on [the diversity statute] and that the disagreement between the [*Barber*] Court and the dissenters thus centered only on the extent of the limitation.

*Ankenbrandt*, 504 U.S. at 699.

*See also Wigington v. McCarthy*, 124 F.3d 219 (10th Cir. 1997) (unpublished) (as made clear in *Ankenbrandt*, the domestic relations exception exists as matter of statutory construction of the diversity jurisdiction statute).

At the time of the *Barber* decision, the diversity statute granted district courts jurisdiction over "all suits of a civil nature at common law or in equity." That phrase "remained a key element of statutory provisions demarcating the terms of diversity jurisdiction until 1948, when Congress amended the diversity jurisdiction provision to eliminate th[at] phrase and replace it with the term 'all civil actions.'" *Ankenbrandt*, 504 U.S. at 698; *see* 28 U.S.C. § 1332(a).[3] The Supreme Court concluded that the change in the language of the diversity statute did not alter the domestic relations exception because Congress is presumed to make statutory amendments with "full cognizance of the Court's nearly century-long interpretation of the prior statutes, which had

---

[3] Section 1332(a) of title 28 states:
> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
> **(1)** citizens of different States;
> **(2)** citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
> **(3)** citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
> **(4)** a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C.§ 1332(a).

construed the statutory diversity jurisdiction to contain an exception for certain domestic relations matters." *Id.* at 700.

Even though the Supreme Court's decisions in *Ankenbrandt* and *Barber* confirm the domestic relations exception to federal jurisdiction, those decisions do not establish a domestic relations exception to the jurisdiction of the bankruptcy court. Unlike the jurisdictional statutes at issue in *Ankenbrandt* and *Barber*, this Court's jurisdiction rests on federal bankruptcy jurisdiction granted under 28 U.S.C. § 1334, not federal diversity jurisdiction granted under 28 U.S.C. § 1332.[4] The *Ankenbrandt* Court framed the issue before it as "whether the federal courts have jurisdiction . . . *when the sole basis for federal jurisdiction is the diversity-of-citizenship provision of 28 U.S.C. § 1332*," *id.* at 691 (emphasis added). *See also Marshall v. Marshall*, 547 U.S. 293, 307 (2006) (observing that the *Ankenbrandt* Court rested its conclusion that a domestic relations exception exists as a matter of statutory construction of the diversity jurisdiction provisions.).

The Supreme Court's reasoning in *Ankenbrandt* does not apply where the statutory basis for jurisdiction is not diversity jurisdiction. The Second, Third, Fourth, Fifth, and Ninth Circuit Courts of Appeal have all held that the domestic relations exception applies only to diversity jurisdiction, and, therefore, does not limit federal question jurisdiction under 28 U.S.C. § 1331.[5]

---

[4] 28 U.S.C. § 1334 grants district courts federal bankruptcy jurisdiction. 28 U.S.C. § 157(a) authorizes district courts to refer the exercise of that jurisdiction to bankruptcy courts. The standing order of reference of the United States District Court for the District of New Mexico, entered March 19, 1992, refers the exercise of bankruptcy jurisdiction to the United States Bankruptcy Court for the District of New Mexico. Other district courts throughout the nation similarly have entered standing orders referring the exercise of bankruptcy jurisdiction under § 1334 to bankruptcy courts.

[5] *Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d Cir. 2019) ("That the Court in *Ankenbrandt* recognized a domestic relations exception to the diversity jurisdiction statute . . . has no bearing on whether such an exception applies in non-diversity cases."); *Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 947 (9th Cir. 2008) ("[T]he domestic relations exception applies only to the diversity jurisdiction statute"); *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997) (stating that the domestic relations exception "is applied only as a judicially implied limitation on the diversity jurisdiction; it has no generally recognized application as a limitation on federal question jurisdiction"); *United States v. Bailey*, 115 F.3d 1222, 1231 (5th Cir. 1997) ("The domestic relations exception obtains from the diversity jurisdiction statute . . . and therefore it has no application where . . . there exists an independent basis for federal jurisdiction."); *Flood*

Similarly, several bankruptcy courts have held that the domestic relations exception does not limit the bankruptcy court's jurisdiction under § 1334.[6] On the other hand, the Seventh Circuit has held that the domestic relations exception "appl[ies] to both federal-question and diversity suits." *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018). The Tenth Circuit has not ruled on the issue. *See Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1112 (10th Cir. 2000), as amended on denial of reh'g and reh'g en banc (Oct. 12, 2000) (reserving judgment on whether the domestic relations exception applies to proceedings involving an exercise of federal question jurisdiction.). This Court finds the reasoning of the Second, Third, Fourth, Fifth, and Ninth Circuit Courts of Appeal persuasive. The domestic relations exception, which applies only to diversity jurisdiction, does not limit bankruptcy jurisdiction under 28 U.S.C. § 1332.

Because the domestic relations exception to diversity jurisdiction does not apply to bankruptcy court jurisdiction under 28 U.S.C. § 1334, the jurisdiction granted to bankruptcy courts under 28 U.S.C. § 1334[7] includes jurisdiction to divide community property that is property of the bankruptcy estate between debtor spouses or between a debtor spouse and a non-filing spouse, even where the spouses are parties to a pending divorce proceeding. Examination of 28 U.S.C. § 1334(e) and 11 U.S.C. § 541(a)(2) further supports this conclusion regardless of whether the domestic relations exception applies to federal question jurisdiction under 28 U.S.C. § 1331.

---

*v. Braaten*, 727 F.2d 303, 307 (3d Cir. 1984) ("[I]t is sufficient to note that the domestic relations exception *per se* applies only to actions in diversity.").

[6] *In re Blixseth*, No. 09-60452-7, 2011 WL 3274042, at *7 (Bankr. D. Mont. Aug. 1, 2011), *order amended on denial of reconsideration,* 463 B.R. 896 (Bankr. D. Mont. 2012) (holding that the domestic relations exception did not limit the court's jurisdiction under § 1334 and § 157); *In re Bandini*, 165 B.R. 317, 321 (Bankr. S.D. Fla. 1994) (finding *Ankenbrandt* "wholly inapplicable" because it was based on § 1332 rather than § 1334). *Contra Universal Profile, Inc. v. Atlanta Fed. Sav. & Loan (In re Universal Profile, Inc.)*, 6 B.R. 194, 196 (Bankr. N.D. Ga. 1980) (concluding that under the domestic relations exception to federal court jurisdiction bankruptcy courts do not have jurisdiction with regard to domestic relations issues).

[7] *See* Note 4, *supra*.

Under 28 U.S.C. § 1334(e)(1), the Court has "exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate[.]" 28 U.S.C. § 1334(e)(1). This jurisdiction includes "all . . . property, . . . [including a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is . . . under the sole, equal, or joint management and control of the debtor[.]" 11 U.S.C. § 541(a)(2). By vesting exclusive jurisdiction over property of the estate in the bankruptcy courts, Congress "grant[ed] the bankruptcy court special jurisdiction" in order to "preclude the type of jurisdictional disputes evidenced in . . . cases" where jurisdiction was based on whichever court first asserted in rem jurisdiction. *In re White*, 851 F.2d 170, 172-73 (6th Cir. 1988). If a spouse commences a bankruptcy case during the pendency of a divorce or dissolution proceeding, "[t]he bankruptcy petition terminates the jurisdiction of the divorce or dissolution court over, at least, the non-exempt assets of the spouses until all creditors are paid in full." *In re Teel*, 34 B.R. 762, 764 (9th Cir. BAP 1983) (quoting 4 *Collier on Bankruptcy* ¶ 541.15 (15th ed.1983)). The bankruptcy court's jurisdiction over community property that is property of the bankruptcy estate is also reflected in the operation of the automatic stay, which applies to proceedings in state court that "seek[] to determine the division of property that is property of the estate." 11 U.S.C. § 362(b)(2)(A)(iv).[8]

Here, Debtor filed her chapter 11 bankruptcy case before E. Ament filed his bankruptcy case. Upon the Debtor's filing, all of the community property, including E. Ament's interest in the community property, became property of the Debtor's bankruptcy estate. *See* 11 U.S.C. §

---

[8] Section 362(b)(2)(A)(iv) provides:
> The filing of a petition under section 301 . . . of this title . . . does *not* operate as a stay . . . of the commencement or continuation of a civil action or proceeding . . . for the dissolution of marriage, *except* to the extent that such proceeding seeks to determine the division of property that is property of the estate[.]

11 U.S.C. § 362(b)(2)(A)(iv) (emphasis added).

541(a)(1)(2) ("The commencement of a case . . . creates an estate. Such estate is comprised of . . . [a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case . . ."). Debtor's proposed Plan divides certain community property between the Debtor and her spouse, E. Ament. Because this Court has jurisdiction to divide the Debtor's and E. Ament's interest in community property, the Court has jurisdiction to resolve the property division issues presented by Debtor's Plan.[9]

Even so, the bankruptcy court's exclusive jurisdiction under 28 U.S.C. § 1334(e) over property of the estate may be relinquished. "Exclusive jurisdiction" granted in 28 U.S.C. § 1334(e) must be understood in the context of § 1334(c)(1). *See Lee v. Miller*, 263 B.R. 757, 761 (S.D. Miss. 2001) (stating that "§ 1334(e) must be appropriately construed in consonance with the other bankruptcy venue provisions."). Subsection (c)(1) of § 1334 provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Construing § 1334(c)(1) and § 1334(e) together, it is clear that, although the bankruptcy court has exclusive jurisdiction over property of the estate once a petition is filed, the bankruptcy court may choose to abstain from exercising its jurisdiction and modify the stay to allow a state court to divide community property. *See In re Thorpe*, 546 B.R. 172, 177 (Bankr. C.D. Ill. 2016), *aff'd,* 569 B.R. 310 (C.D. Ill. 2017), *aff'd,* 881 F.3d 536 (7th Cir. 2018) ("[B]ankruptcy courts are correct to modify the automatic stay for [the division of marital property], even though property of the estate may be involved."). [10] *See*

---

[9] The Debtor has asked the state court to enter a bifurcated decree dissolving the marriage, reserving other issues, such as property division, for further proceedings. Although this Court has jurisdiction to divide community property that is property of the estate between spouses, the Court makes no decision regarding whether this may or should be done before the state court dissolves the marriage.

[10] *Cf. In re Stampley*, No. 12-60732-13, 2013 WL 492490, at *3 (Bankr. D. Mont. Feb. 8, 2013) (deeming it "appropriate under the domestic relations exception, and for purposes of comity with the state court and

*also Blachy v. Butcher*, 221 F.3d 896, 909 (6th Cir. 2000) (notwithstanding 28 U.S.C. § 1334(e), "a bankruptcy court can share its jurisdiction with other courts.").

Whether the Court should exercise its jurisdiction to divide community property or abstain is a different question. *Lewis v. Lewis (In re Lewis)*, 423 B.R. 742, 754 (Bankr. W.D. Mich. 2010) (even if a bankruptcy court has subject matter jurisdiction to divide marital property, the court typically will abstain from exercising that jurisdiction under 28 U.S.C. § 1334(c)(1)).[11] Abstention depends on several factors, including, for example, whether the state court presiding over the divorce proceedings can timely divide the community property consistent with the needs of the bankruptcy case, and whether or to what extent division of the community property is intertwined with any alimony or child support issues. Whether this Court should abstain from dividing the Debtor's community property requires an examination of facts not apparent from the face of the Plan. Consequently, because the Court has jurisdiction to divide community property as the Debtor's Plan proposes, the Court will overrule City Bank's objection to the disclosure statement based on its assertion that the Plan is unconfirmable on its face.

---

respect for state law, to abstain and defer to the state courts on appeal, and the court which entered the decree, for their determination of the merits of the [d]ebtor's appeal and any subsequent proceedings involving division of marital property[.]").

[11] *See Carver v. Carver,* 954 F.2d 1573, 1578-80 (11th Cir. 1992) (discussing the public policy supporting abstention in domestic relations matters, which applies in bankruptcy cases, particularly in matters involving divorce, alimony, child custody, child support, visitations rights, establishment of paternity, and enforcement of separation or divorce decrees.). *Cf. Irish v. Irish*, 842 F.3d 736, 741 (1st Cir. 2016) ("[S]tate courts are experts at dividing marital property, entering the necessary decrees, and handling the sensitive conflicts that follow[,]" which reinforces the policy rationale for the domestic relations exception to federal court jurisdiction); *Xie v. Turner Designs Hydro Carbon Instruments, Inc.*, No. 1:17-cv-00284-LJO-SKO, 2017 WL 6371363, at *6 (E.D. Cal. Dec. 13, 2017) (observing that property division and alimony arrangements generally are inextricably intertwined).

B.    **The Disclosure Statement Does Not Contain Adequation Information**

The Court agrees with City Bank that the disclosure statement is inadequate because it fails to a) disclose Debtor's assets; b) provide details as to Debtor's current finances; c) discuss current or future litigation; or d) address the potential risks of reorganization. Docket No. 50. A disclosure statement in a chapter 11 case must contain "adequate information." 11 U.S.C. § 1125(a). *See also* 11 U.S.C. § 1125(b) (stating that "acceptance or rejection of a plan may not be solicited . . . unless . . . there is transmitted to [a] holder [of a claim or interest] . . . a written disclosure statement approved . . . by the court as containing adequate information").

To satisfy this requirement, the disclosure statement must contain "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable [] a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a). "What constitutes adequate information is to be determined on a case-specific basis under a flexible standard . . . ." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988).

In a chapter 11 case with a relatively simple debt structure and limited assets, such as this case, the disclosure statement should at least disclose:

1. The events leading to the filing of the bankruptcy case;
2. A summary of any significant events during the bankruptcy case;
3. A summary of claims by class and a description of the available assets and their value (which can be set forth in an exhibit);
4. The estimated administrative expenses, including attorneys' and accountants' fees;
5. The future management of the debtor, anticipated insider compensation, if any, and the nature of its anticipated future operations;
6. Executory contracts and unexpired leases to be assumed or rejected;
7. Financial information, including projections, relevant to plan feasibility and the creditors' decision to accept or reject the plan;
8. A discussion of the risks to creditors under the plan;

9. The relationship of the debtor with affiliates, if applicable, if it affects plan feasibility or risks to creditors;
10. If applicable, the actual or projected realizable value from recovery of fraudulent, preferential or other voidable transfers;
11. Any relevant tax consequences flowing from plan confirmation;
12. A liquidation analysis under the best interest of creditors test if unsecured creditors are not being paid in full; and
13. A summary of the plan.[12]

Debtor's proposed disclosure statement fails to satisfy these requirements to the extent set forth below.

WHEREFORE, IN ACCORDANCE with the Court's rulings at the hearing,

IT IS ORDERED:

I. <u>Deadline to File and Serve Second Amended Disclosure Statement:</u> No later than **January 30, 2020**, Debtor shall file a second amended disclosure statement and send a copy to all parties in interest. Debtor may also file an amended Plan of Reorganization if she chooses to do so.

II. The second amended disclosure statement must contain the following additional disclosures.

   A. <u>NMTRD's Objections</u>: Make corrections and additions to the disclosure statement in accordance with the agreement of the Debtor and NMTRD that as stated on the record.

   B. <u>Debtor's Assets</u>
   1. Identify the estate's assets and Debtor's estimated values of the assets;
   2. Indicate which assets are community property and which assets, if any, are Debtor's sole and separate property or owned by Debtor as a joint tenant, tenant in common, or otherwise;
   3. Debtor's schedules state that she has a 50% ownership interest in Log Cabin, Inc. Similarly, in the E. Ament chapter 7 case, his schedules state that he has a 50% ownership interest in Log Cabin, Inc. Explain the percentage ownership interests of the stock of Log Cabin, Inc. and whether it is community property, owned by Debtor and E. Ament as joint tenants or tenants in common, or owned in some other way.

---

[12] For cases setting forth factors courts consider in determining whether a chapter 11 disclosure statement provides adequate information, *see, e.g. In re Budd Co., Inc.*, 550 B.R. 407, 412–13 (Bankr. N.D. Ill. 2016); *In re Coastal Realty Investments, Inc.*, No. 12-20564, 2013 WL 214235, at *5–6 (Bankr. S.D. Ga. Jan. 17, 2013); *In re Howell*, No. 09-91538, 2011 WL 1332176, at *1 (Bankr. N.D. Ga. Jan. 21, 2011).

C. <u>Divorce Proceedings</u>: The Debtor's divorce proceedings create risks relating to feasibility of the proposed Plan. The disclosure statement should provide more information regarding the status of Debtor's divorce proceedings, including:

1. The date the divorce proceeding was commenced;
2. Whether the marriage has been dissolved or the marital property divided;
3. The status of Debtor's motion to bifurcate the dissolution of marriage and property division aspects of the divorce proceedings;
4. Anything else of relevance to feasibility of the plan;
5. The plan does not propose to divide the stock in Log Cabin, Inc. between Debtor and E. Ament The disclosure statement should contain an explanation regarding whether Debtor expects that the stock of Log Cabin, Inc. will be divided in the divorce proceeding, and whether she expects that she and E. Ament each will continue to own a 50% interest in Log Cabin, Inc. after the divorce proceeding concludes, and how that might affect plan feasibility. The disclosure statement should address whether E. Ament may have a claim in the bankruptcy case depending on the disposition of the stock, the amount of the claim, and how that might affect plan feasibility.
6. The Plan proposes to divide the following marital property: (a) the real property located at 1064 Mechem in Ruidoso; (b) the real property located at 1064 Mechem in Ruidoso; and (c) a 2003 Porsche Cayenne and 2003 Dodge Ram Pickup. If Debtor asserts she has a compelling need to divide that property through confirmation of a plan rather than in the divorce proceeding, particularly in light of the fact that ownership of the Debtor's and E. Ament's interest in Log Cabin, Inc. will be dealt with in the divorce proceeding, the disclosure statement should include an explanation why.

D. <u>Log Cabin, Inc.</u>: The Debtor is relying primarily on profits from the operation of the restaurant owned by Log Cabin, Inc. to fund the proposed Plan. Information about those operations should be disclosed. The disclosure statement should provide a description of the business, including

1. The type of restaurant;
2. When the business began;
3. How Debtor acquired it;
4. That Debtor manages the restaurant and the amount of Debtor's historical and projected future compensation from Log Cabin, Inc.;
5. How E. Ament obtained a 50% interest in Log Cabin, Inc.;
6. The customer base (local v. tourist); and
7. Whether the business is seasonal, and, if so, the high and low times of the year.

E. <u>Administrative Expenses.</u> The disclosure statement should estimate the amount of administrative expenses that will be incurred to confirm the plan and whether the expenses will be paid on a current basis.

F. <u>Historical Data supporting the Cash Flow Projections</u>: Debtor's cash flow projections to support plan feasibility relate primarily to the projected profitability of

Log Cabin, Inc. The disclosure statement should provide twelve-month calendar year income statements for Log Cabin, Inc. for 2017, 2018, and 2019.

G. Amortization Period: A 15-year amortization period is more typical for commercial loans of the type made by City Bank than a 25-year amortization. Debtor has proposed to amortize the loan over 25 years. The disclosure statement should explain whether it is necessary to amortize the obligation to City Bank over 25 years to make the plan feasible and if so why.

H. Risks to plan feasibility: The disclosure statement should address the risks to plan feasibility posed by:
1. The division of property in the divorce proceedings;
2. The seasonality of Log Cabin, Inc.'s income;
3. The alleged arrest of the third party operating the tool rental business on the 1064 Mechem Drive property, if any. If his arrest does not pose any risks to the plan feasibility, explain why not.
4. Risks associated with whether E. Ament will continue to have an ownership interest in Log Cabin, Inc.

II. Deadline to Object to Debtor's Second Amended Disclosure Statement: The time to object to the Second Amended Disclosure Statement is shortened pursuant to Fed. R. Bankr. P. 9006(c)(1). Objections must be filed by **February 14, 2020**.

III. Final Hearing on Debtor's Second Amended Disclosure Statement:
A. If any objection is timely filed, the Court will hold a final hearing on **February 27, 2020 at 9:30 a.m.** in the Gila Courtroom, 5th Floor, Pete V. Domenici United States Courthouse, 333 Lomas Blvd. NW, Albuquerque, New Mexico.

B. Debtor and Counsel for Debtor may appear by video from Roswell. Other parties may appear in person or may request telephone appearance by calling the Court at (505) 600-4650 or by sending an email to jacobvitzstaff@nmb.uscourts.gov at least one day before the hearing.

**IT IS FURTHER ORDERED** that City Bank's objection to the disclosure statement on the ground that it is unconfirmable on its face because it proposes to divide community property is overruled.

_/s/ Robert H. Jacobvitz_
Robert H. Jacobvitz
United States Bankruptcy Judge

Date Entered on Docket: January 21, 2020

Copy To:

R Trey Arvizu, III
Attorney for Debtor
PO Box 1479
Las Cruces, NM 88004-1479

James C. Jacobsen
NM Tax and Revenue Department
201 Third Street Suite 300
Albuquerque, NM 87102

Brad W. Odell
Attorney for City Bank
Mullin Hoard & Brown, LLP
PO Box 2585
Lubbock, TX 79408

Alice Nystel Page
Office of the U.S. Trustee
PO Box 608
Albuquerque, NM 87103-0608